Cadwallader v. Durham.

---

ISAAC CADWALLADER, OVERSEER OF THE POOR OF EWING TOWNSHIP, v. JACOB S. DURHAM, OVERSEER OF THE POOR OF EAST AMWELL TOWNSHIP.

1. Settlement of a child born of a slave after July 4th, 1804, will be gained by full seven years' service with a master who has a right to such service by legal transfer thereof from the owner of the slave mother.

2. Abandonment of an order of removal by an overseer in whose favor it is, is a bar to another proceeding for the removal of the same pauper between the same parties except upon the ground of a subsequently-acquired settlement.

On *certiorari* to the Hunterdon Quarter Sessions. In matter of the legal settlement of a pauper.

Argued at November Term, 1883, before Justices KNAPP, DIXON and MAGIE.

For the plaintiff in *certiorari, W. M. Lanning.*

For the defendant, *O. J. Blackwell* and *R. S. Kuhl.*

The opinion of the court was delivered by

KNAPP, J.    Anna Mary Burroughs was removed as a pauper from the township of East Amwell, in the county of Hunterdon, to Ewing township, Mercer county, by an order made by a justice of the peace of Hunterdon county, on the 21st day of November, 1882.   Upon appeal, heard in the Quarter Sessions of Hunterdon, this order was affirmed. These determinations are sought to be reversed for reasons which will be considered.

The legal settlement of the pauper under the facts before us depends upon that which her grandfather, William Burroughs, imparted to her.   He was born after July 4th, 1804, of a slave in the township of Hopewell, in Mercer county, and, under the law, had his settlement there until another should be acquired in some statutory mode.

By the second proviso of the sixth section of the act of June 10th, 1820, (*Elm. Dig., p.* 416,) it is enacted " that the male or female children of slaves shall obtain a legal settlement in the city, borough, township or precinct in which such servant shall first serve with his or her master or mistress for the space of seven years; and if, afterwards, such servant shall duly serve in any other place for the space of full seven years, such servant shall obtain a legal settlement in the city, &c., where such service was last performed, either with his or her first master or mistress or with any other master or mistress by virtue of a legal transfer of such servant."

The Court of Quarter Sessions have certified to us, as facts found, that the owner of Burroughs' mother, on the 1st of April, 1822, sold the time of said Burroughs, when he was nine years old, to one Samuel Edwards, of the township of Ewing, until he was seventeen years old, for a consideration stated, and that under and by virtue of said sale of service said Burroughs lived and worked for said Edwards, in Ewing

township, from April 1st, 1822, to April 1st, 1830; that in June, 1830, a person acting as agent for said owner executed another agreement in writing with said Edwards concerning further service of said Burroughs for a term of six years, (as an inspection of the exhibit shows,) for a consideration to be paid to said owner, and that said Burroughs continued to live and work for said Edwards in Ewing township until the expiration of said term named in the writing, making the service continuous from April 1st, 1822, to the end of the said term, when the agreement was given up to Burroughs and he was told by Edwards that he was free.

These are the facts certified to us as determined by the court, and they must be taken as established if there was competent evidence before the court from which such conclusions could be drawn, it being beyond the province of this court to weigh conflicting testimony upon disputed questions of fact on *certiorari* in such cases. *Kingwood* v. *Bethlehem,* 1 *Green* 221; *Tewksbury* v. *Branchburg,* 15 *Vroom* 595.

The facts so determined by the proper forum seem to me to make a clear case in support of the judgment of the court below on this branch of inquiry. Is there evidence to support these conclusions? That Burroughs served Edwards there is abundant evidence; that it was with the assent and through contract with the owner of the slave mother is by no means without testimony to support it. But it is said that it was not under such form of contract or such disposition of service as is contemplated in the terms of the act requiring service " by virtue of a legal transfer of such servant." Plaintiff in *certiorari* urges that the service which draws to it a settlement of the servant, must be under a second or other master or mistress who holds by a formal assignment of the entire property and interest of the assignor.

If transfer in writing were essential, it would be inferred that the Court of Sessions found the sale to be by writing, as there was some evidence before that court that the first as well as the second term of service engaged for was in writing, but I think no writing was necessary to convey the property which

the owner had in the services of such person. The services, not the servant, were his property. The law recognized that as the subject of sale. In the act of 1804 for the gradual abolition of slavery, as well as that of 1820, the services of children of slaves are given to the owner of the slave mother, or the assigns of such owner, but any legal mode of passing title to things personal in possession would, I think, without doubt, be sufficient to pass such property. There is nothing in the words "legal transfer" implying more than an agreement for sale upon a consideration.

In *Franklin* v. *Bridgewater, Spenc.* 563, the transfer of such a servant in form of indenture of apprenticeship, the instrument being void for the purposes expressed in it, was regarded such evidence of a disposal of the right of service that labor of the servant performed under it was accounted in giving a settlement.

Nor am I able to hold with the view of plaintiff that settlement can only be obtained under a master who holds an assignment of the entire term. I deem it not a necessary conclusion from the phrase "legal transfer of such servant." If it be such a sale as for the time dissolves or suspends the relation of master and servant then existing, and creates a new one between the purchaser and servant, there is by that a legal transfer of such servant, and if the term and service under it be for the statutory period, the law gives a settlement. The statute did not give this advantage to a runaway, or to one serving with a master not deriving his title from the lawful owner, but did confer it after seven years given to any person legally entitled, during the time, to stand in the relation of master. No case is referred to, supporting the plaintiff's contention, and I think it is not supported by either the words or policy of the statute. That the right of settlement should be limited to a course of conduct in subordination to the title which the statute gave to the temporary labor of the child born of a slave, would seem a reasonable object of the law. I see no reason for holding, as requisite under the act, an assignment of the entire interest and property, to secure any

right or interest involved, or to meet the words of the statute. It is only requisite that, through a valid contract with the owner, there be raised a new relation of master and servant, and that the term of service sold, if not the whole, be for sufficient time to give, through performance under said sale, the right to settlement.

The Court of Sessions in this view had evidence upon which to found its judgment that there was full seven years' service in the township of Ewing with a master holding under a legal transfer of the servant Burroughs.

But there is another objection presented against the judgment of the Court of Sessions, which is more embarrassing, and that is, that the township of East Amwell had obtained a prior order removing the same pauper from there to the township of Ewing; that, after appeal taken therefrom by the overseers of Ewing, the overseer of East Amwell gave up the order and took the pauper back, paying for her support while in the township of Ewing, and the appeal coming on to be heard before the Quarter Sessions of Hunterdon, was quashed, with costs. This is set up in bar of the present proceeding. It was held in the case of *Piscataway* v. *Perth Amboy*, 4 *Harr.* 173, that the abandonment of an order of removal by the party in whose favor it was, made a bar to subsequent proceedings between the same parties to remove the same pauper, in the absence of fraud or collusion on the part of the overseers of the township charged with the order. In this case, the court certifies that the abandonment of the first proceeding was had after notice of appeal was given, and with the understanding on the part of the overseer of East Amwell that he would proceed to have another order made to Ewing township. The only circumstance in which the two cases differ is that here, at the time of the surrender, it was not the intention of the party giving up the order that it should be a final abandonment of his claim of right.

But the case does not show that an understanding existed between the overseers of the two townships that the proceedings were withdrawn for the purpose of commencing again.

Had that been so, it might be regarded as a fraud in the overseer of Ewing township to set such order up in bar to a subsequent proceeding. I do not think it a material circumstance that when the order was abandoned the purpose existed in the mind of the overseer of East Amwell, or that the purpose was expressed, not to surrender the claim of right. After giving up the adjudication in his favor, he had no right, under the decision mentioned, to entertain the purpose to begin again, and I am unable to see how the circumstance prevents the application of the rule in that case. The necessity or propriety of abandoning the proceedings, if such abandonment was not intended to be final, is not apparent. The court, on appeal, had, under the forty-third section of the poor law, ample power to cause any defect of substance as well as form found in the original judgment or order, or any proceedings connected with it, to be rectified or amended as the facts of the case might warrant, and, after such amendment, to proceed to hear and determine the appeal on the merits, and why the order should have been given up I am unable to conjecture, if it was not a surrender of the right of removal. The case referred to has stood as the law in this state for forty years, and, so far as I know, without question, and it seems to me that it is controlling here. Notwithstanding the withdrawal of the first order, the township of Ewing pursued the appeal, a day was assigned by the court for its hearing, and no one appearing on the part of the appellee to maintain the order, the order of removal was quashed and for nothing holden, and an award of costs was made to the appellant.

It has been held that where an order of removal has been abandoned, the Sessions in discretion may entertain an appeal to settle the costs and expense of the party appealing. *Rex* v. *Norfolk*, 5 *B. & Ald.* 483. In such a case the judgment of the Sessions would seem to serve no other purpose than to fix the costs, for, after abandonment, the order would no longer form the subject matter of appeal, and would not be made the foundation of judgment. Here, although by the case it appears that the order had been abandoned, the record

shows a judgment quashing the order, as well as awarding costs.

A general order to quash I think must be assumed to be upon merits, and therefore a bar to any other proceeding in respect to the pauper upon the existing facts.

The record of the Quarter Sessions in that case, standing unreversed, we think must be conclusive as to the matters contained in it, and cannot be subject to modification by any finding of the court. I am unable to see, therefore, how the decision of the Quarter Sessions can be sustained against the objections mentioned.

The judgment must be reversed.